UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark, III |
| v. | : | Mag. No. 23-12229 |
| OSCAR MARCELO NUNEZ-FLORES | : | **CRIMINAL COMPLAINT** |

I, Special Agent Tamara M. Teller, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with the U.S. Drug Enforcement Administration, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

Continued on the attached page and made a part hereof:

_s/Tamara M. Teller_
Tamara M. Teller
Special Agent
U.S. Drug Enforcement
Administration

Special Agent Tamara M. Teller attested to this Complaint by telephone pursuant to Fed. R. Crim. P. 4.1(b)(2)(A), on October 27, 2023.

HONORABLE JAMES B. CLARK, III
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

1

## ATTACHMENT A

### COUNT ONE
*(Conspiracy to Launder Monetary Instruments)*

From in or around 2022 through in or around October 2023, in Union County, in the District of New Jersey, and elsewhere, the defendant,

### OSCAR MARCELO NUNEZ-FLORES,

did knowingly and intentionally conspire and agree with others to transport, transmit, transfer, and attempt to transport, transmit, and transfer, a monetary instrument or funds from a place in the United States to or through a place outside the United States and to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, and knowing that the monetary instrument or funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Sections 1956(a)(2)(A) and 1956(a)(2)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

## COUNT TWO
*(Receipt of Bribes by a Bank Employee)*

On or about April 12, 2022, in Union County, in the District of New Jersey, and elsewhere, the defendant,

OSCAR MARCELO NUNEZ-FLORES,

as an employee of a financial institution, corruptly solicited and accepted something of value from a person, to wit, the receipt of $1,200, with the intention to be influenced or rewarded in connection with business and transactions of such institution.

In violation of Title 18, United States Code, Section 215(a)(2).

## ATTACHMENT B

I, Tamara M. Teller, am a Special Agent with the U.S. Drug Enforcement Administration. I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other items of evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

### The Defendant, Relevant Entities, and Overview of the Scheme

1. At all times relevant to this Complaint:

    a. Defendant Oscar Marcelo Nunez-Flores ("Nunez") resided in New Jersey and, beginning in October 2020, worked as a Financial Service Representative at a Scotch Plains-based store of an international financial institution ("Financial Institution-A").

    b. As part of his duties, Nunez was the "sales leader" for the store in Scotch Plains and was the primary contact for both new and existing customers.

    c. Financial Institution-A, one of the largest retail banks in the United States, maintained policies, procedures, and training related to Anti-Money Laundering ("AML"), Anti-Bribery, and Anti-Corruption. Pursuant to these policies and procedures, employees of Financial Institution-A were prohibited from requesting or receiving anything of value in order to influence an act or decision. Employees of Financial Institution-A were also prohibited from falsifying accounts, documents, and records. Financial Institution-A provides these policies and procedures to all employees and requires employees, such as Nunez, to complete an annual AML training.

    d. Financial Institution-A also had policies and procedures regarding onboarding new business accounts. As part of these policies and procedures, a Financial Institution-A representative had to complete a form that identifies the "Individual with Control" of any business opening a new account.

    e. Nunez repeatedly and corruptly accepted bribes from individuals in return for creating accounts at Financial Institution-A in the names of shell companies with nominee owners who Nunez knew were not actually controlling the accounts. In exchange for the bribes, Nunez also provided numerous debit cards associated with each account and online access to the accounts. Those debit cards were used to launder millions of dollars from the United States to Colombia, primarily through withdrawals at Automated Teller Machines ("ATMs") in Colombia.

### Shell Company-A Account

2.      On or about April 12, 2022, at the Financial Institution-A store in Scotch Plains, New Jersey, Nunez opened a Financial Institution-A bank account for a company registered in Florida ("Shell Company-A"). On the account opening documents, Nunez identified an associate ("Nominee-A") as the "Individual with Control" of the account, even though Nunez knew that Nominee-A would not control the account.

3.      Nunez then knowingly and willfully provided a third-party ("Individual-1")[1] with unfettered access to the Shell Company-A account and intentionally did not identify Individual-1 on any forms related to Shell Company-A's bank account. In exchange for that surreptitious access, Individual-1 paid Nunez approximately $2,500. Individual-1 paid part of that bribe to Nunez through one of Individual-1's business accounts on or about April 12, 2022.

4.      On or about April 26, 2022, after receiving the bribe payment, Nunez caused Financial Institution-A to issue over twenty debit cards for the Shell Company-A account. These debit cards were predominantly used to withdraw cash from ATMs in Colombia.

5.      In exchange for additional bribe payments, Nunez created two more accounts for Individual-1 in a similar manner. In each instance, Nunez falsely identified a nominee as the "Individual with Control," when in fact Nunez knew that Individual-1 was controlling each account.

6.      From on or about May 6, 2022 through on or about August 8, 2022, through the three accounts Nunez opened for Individual-1, over 17,000 international ATM withdrawals were conducted and approximately $1,916,000 was routed from the United States to Colombia and elsewhere. Nunez monitored the activity in these accounts, understood the unusual flow of funds through these accounts, and, on several occasions, caused new debit cards to be issued that were subsequently used for ATM withdrawals in Colombia.

7.      Based on my experience investigating money laundering, there was no legitimate reason for Nunez to create accounts in the names of shell companies and provide access to the accounts to Individual-1, who Nunez did not identify on the account opening paperwork. Further, the activity in the accounts, constituting large deposits followed almost immediately by corresponding ATM withdrawals in

---

[1] Individual-1 and others known and unknown to the Affiant deposited illicit proceeds, including proceeds related to the manufacture, importation, and distribution of illegal narcotics, into bank accounts in the names of shell companies. The purpose and effect of Individual-1's money laundering scheme was to repatriate illicit proceeds from locations in the United States to Colombia, including through Financial Institution-A.

Colombia, is activity that Nunez, particularly in light of his training and experience in the financial industry, would have understood is indicative of money laundering.

### Shell Company-B Account

8. On or about February 16, 2023, at the Financial Institution-A store in Scotch Plains, New Jersey, Nunez opened a bank account at Financial Institution-A for a company registered in Florida ("Shell Company-B"). Nunez identified Nominee-B as the "Individual with Control" on the account opening documents.

9. Nunez subsequently mailed several debit cards associated with the Shell Company-B account to in or around Cucuta, Colombia. Prior to mailing the debit cards, which were then used for ATM withdrawals in Colombia, Nunez withdrew funds from the Shell Company-B account in Scotch Plains, New Jersey. Specifically:

   a. On or about March 6, 2023, a debit card linked to the Shell Company-B account ("Card-1") was used at the Financial Institution-A store in Scotch Plains, New Jersey—the store where Nunez worked—to withdraw approximately $1,000. The same day, another debit card linked to the Shell Company-B account ("Card-2") was used to withdraw approximately $400 at the same store.

   b. On or about March 7, 2023, Card-2 was used to make a $50 withdrawal, again at the Financial Institution-A store in Scotch Plains, New Jersey.

   c. On or about the same day, Nunez sent a package to in or around Cucuta, Colombia. The package was identified as being from Shell Company-B; however, Nunez provided his home address and personal phone number in the shipping details. Nunez used Card-2 to pay for the package sent to Colombia, which was delivered on or about March 13, 2023.

   d. Beginning on or about March 14, 2023 and continuing for several months, both Card-1 and Card-2 were used repeatedly at ATMs in Colombia to withdraw funds from the Shell Company-B account.

10. Similar to the activity of the Shell Company-A account, the account that Nunez opened for Shell Company-B was used almost exclusively for ATM withdrawals in Colombia. Over approximately 4,000 ATM withdrawals were conducted from the Shell Company-B account, totaling in excess of approximately $1,500,000.

### Shell Company-C Account

11. On or about September 22, 2022, an account for Shell Company-C, which is identified as being located in both Plainfield, New Jersey and Florida, was opened at the Financial Institution-A store in Scotch Plains, New Jersey. The account

opening documents listed one of Nunez's associates ("Nominee-C") as the beneficial owner and "Individual with Control" of the account. As recently as on or about October 1, 2023, Nunez and Nominee-C were still in regular contact.

12. Approximately 28 debit cards were linked to the Shell Company-C account, which, like Shell Company-A and Shell Company-B, was used to transfer money from the United States to Colombia, largely through ATM withdrawals. The amount withdrawn from the Shell Company-C account at ATMs in Colombia exceeded approximately $750,000.

13. From in or around November 2022 through in or around early 2023, Shell Company-C received multiple incoming wires from an account at another U.S. financial institution ("Financial Institution-B") in the name of another shell company ("Shell Company-D"). These funds were quickly withdrawn from the Shell Company-C account through ATM transactions in Colombia.

14. Shell Company-D also transferred money directly to Nunez. For example, from on or about July 25, 2022 through on or about July 12, 2023, using an online money transfer application, Nunez received approximately 37 payments from the Shell Company-D account at Financial Institution-B, totaling approximately $20,622.